## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| Yent'l Poole, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No.: |
| | ) | |
| v. | ) | |
| | ) | |
| Experian Information Solutions, Inc. | ) | **COMPLAINT** |
| and Nationwide Recovery Service, | ) | **WITH JURY TRIAL DEMAND** |
| Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PRELIMINARY STATEMENT

This action for damages is based on Defendants' false reporting on Plaintiff's credit file and/or consumer reports, failures to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff, and failures to conduct reasonable reinvestigations with respect to such information.

## PARTIES

1.     Plaintiff, Yent'l Poole, is a natural person who resides in Paulding County, Georgia.

2.     Plaintiff is an individual and is therefore a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

1

3.     Plaintiff is allegedly obligated to pay a debt and is, therefore, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

4.     Defendant, Experian Information Solutions, Inc. (hereinafter "Experian"), is a corporation formed under the laws of the State of Ohio, headquartered in the State of California, and registered to do business in the State of Georgia. Experian may be served with process via its registered agent, C T Corporation System, at 289 South Culver Street, Lawrenceville, Georgia 30046-4805.

5.     Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports. Accordingly, Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

6.     Defendant, Nationwide Recovery Service, Inc. (hereinafter "Nationwide"), is a corporation formed under the laws of the State of Tennessee. Nationwide may be served with process via its registered agent, National Registered Agents, Inc., at 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

7.     Nationwide regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions,

2

such as Plaintiff's transactions at issue in this lawsuit and described herein, and is, therefore, a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

8.     Nationwide uses interstate commerce and/or mail in its business. The principal purpose of Nationwide's business is the collection of consumer debts. Nationwide also regularly collects, or attempts to collect, directly, or indirectly, debts owed or due, or asserted to be owed or due, to a third party. Nationwide is therefore a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## JURISDICTION AND VENUE

9.     This Court has federal question jurisdiction over Plaintiff's Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., claims, pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331. This Court's jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., claims likewise arises under 28 U.S.C. § 1331. Additionally, this Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendants because, *inter alia*, Defendants frequently and routinely conduct business in the State of Georgia, including the conduct complained of herein.

3

11.    Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district. Pursuant to LR 3.1B(3), NDGa, venue is proper in the Atlanta Division because one or more Defendants maintain agents for service of process within the Atlanta Division.

### Factual Allegations Derived from Plaintiff's Bankruptcy Case

12.    On April 21, 2014, Plaintiff filed a Chapter 13 Bankruptcy Voluntary Petition in the United States Bankruptcy Court for the Northern District of Georgia, Rome Division, Case Number 14-40947 (the "Bankruptcy").

13.    In Schedule F of her Bankruptcy Petition, Plaintiff listed Nationwide as an unsecured creditor holding nonpriority claims.

14.    On April 23, 2014, Nationwide was served with a copy of the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines by the Bankruptcy Noticing Center, thereby putting Nationwide on notice that the debts Nationwide was attempting to collect from plaintiff were subject to a pending bankruptcy proceeding.

4

15.    On November 16, 2016, Plaintiff's Chapter 13 Bankruptcy was converted to a Chapter 7 Bankruptcy.

16.    On December 7, 2016, Plaintiff filed an Amendment to Schedules, and again listed Defendant Nationwide as an unsecured creditor holding nonpriority claims.  Nationwide was served with a copy of the Amendment to Schedules via United States Mail that same day.

17.    On January 5, 2017, Thomas D. Richardson, the Chapter 7 Trustee, entered a Report of No Distribution, indicating that no creditors would be paid.

18.    On March 21, 2017, the Bankruptcy Court entered an Order Discharging Debtor in Plaintiff's Bankruptcy Case as to all dischargeable debts, and the Bankruptcy Case was closed.

19.    The discharge included the Nationwide debts at issue in this action.

20.    On March 23, 2017, Nationwide was served with notice of the discharge and a copy of the Discharge Order by the Bankruptcy Noticing Center.  The notice included an Explanation of Bankruptcy Discharge in a Chapter 7 Case.

21.    The Explanation of Bankruptcy Discharge in a Chapter 7 Case clearly explained that debts, such as the Nationwide debts at issue in this action, were

5

discharged, and that the discharge prohibits any attempts to collect said debts from

Plaintiff. The relevant portion of the Explanation of Bankruptcy Discharge in a

Chapter 7 Case is reproduced below:

Case 14-40947-mgd    Doc 73    Filed 03/23/17    Entered 03/24/17 01:50:19    Desc Imaged
Certificate of Notice    Page 2 of 4

FORM 182 continued

**EXPLANATION OF BANKRUPTCY DISCHARGE IN A CHAPTER 7 CASE**

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

<u>Collection of Discharged Debts Prohibited</u>

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. [In a case involving community property: There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

This discharge does not affect any property of the estate as defined by section 541 of the Bankruptcy Code, and the automatic stay of section 362(a) of the Bankruptcy Code continues to apply to any property of the estate unless and until the automatic stay has been terminated by order of the court or expires pursuant to section 362(c) of the Bankruptcy Code. Such property remains subject to administration by the trustee on behalf of the bankruptcy estate.

<u>Debts That are Discharged</u>

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

## Factual Allegations Pertinent to All Defendants

22.   The reporting of consumer credit information by credit reporting agencies ("CRAs") and data furnishers is the foundation of credit risk scoring and impacts the financial lives of consumers in innumerable ways, including the availability and cost of credit, housing opportunities, leasing prospects, insurance availability and cost, utility service, and even employment. Between two and three million consumer reports are issued by credit bureaus each day. See, *http://www.cdiaonline.org/about.cfm*.

23.   The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services, and the CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

24.   Because consumer credit reporting information is such sensitive data that has far reaching implications for most, if not all, consumers, the CDIA works

7

together with CRAs to develop, maintain and enhance industry-standard reporting formats and guidelines.

25.    To further assist CRAs and data furnishers with performing their due diligence and reporting accurate, complete, and timely data, in satisfaction of the FCRA's legal requirements, the CDIA offers extensive training, education, and support to CRAs and data furnishers.

26.    The CDIA's extensive training and support offerings include FCRA certification programs for both CRAs and data furnishers to assist each in maintaining compliance with FCRA regulations.

27.    Because standardized methods are of paramount importance to the accurate, complete and timely reporting of consumer credit data, the CDIA can and will revoke FCRA certification for failure to adhere to the standards set by the CDIA.

28.    In cooperation with the major CRAs, CDIA publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA. CDIA's reporting products are used in more than nine billion transactions each year.

See, *http://www.cdiaonline.org/about/index.cfm?unItemNumber=515*

29.     The Metro 2 Format Task Force is comprised of representatives from Equifax, Experian, Innovis, and TransUnion, and is supported by the CDIA.  Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete, and timely data, and has developed the Metro 2 standards. *Id.*

30.     The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

31.     It is axiomatic that in the world of consumer credit information reporting, as long as a consumer credit account is open, every month some piece of information regarding that account/consumer is going to change. For example, interest continues to accrue, payments are made, etc.

32.     15 U.S.C. § 1681e(b) requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of information concerning the individual about whom a report relates. Further, 15 U.S.C. § 1681s-2(a)(2) requires furnishers of information to regularly correct and update the information they previously provided to consumer reporting agencies to make sure the information is complete and accurate.

33.     Accordingly, and in furtherance of its mission, the Metro 2 Format Task Force has developed an industry standard for reporting consumer accounts that "will ensure the integrity and consistency of the credit information being reported." As part of that industry standard the Metro 2 Format Task Force has declared, "<u>All</u> accounts <u>must</u> be reported on a monthly basis." (Emphasis added.) *Id.*

34.     Because consumer credit information changes monthly, failure to update that information on a monthly basis, yet still publishing reports containing the previously reported information without updates, means that the information being reported is almost certainly incomplete and inaccurate.

35.     The Fair Isaac Corporation credit risk scoring system, commonly referred to as FICO, is the leading credit scoring system, and utilizes data reported by credit reporting agencies and furnishers which are, ostensibly, in compliance with Metro 2 standards.

36.     The failure to adhere to CDIA guidelines and the Metro 2 reporting standards can adversely affect a consumer's FICO score.

37.     At all times relevant hereto, Experian has required all entities to whom it grants consumer information reporting rights and access to adhere to the Metro 2 reporting guidelines as a condition of such ability and access.

38.     At all times relevant hereto Nationwide warranted and or represented to Experian that it had adopted and implemented the Metro 2 format for its reporting of consumer data and would otherwise comply with Metro 2 and CDIA guidelines in its reporting of consumer information.

39.     Nationwide has, at all times relevant hereto, incorporated the Metro 2 format for reporting consumer information into its own internal policies and procedures.

40.     Defendants have actual knowledge that entities that perform credit risk scoring, and other functions utilizing the data reported by Defendants, assume Defendants' compliance with Metro 2 standards in reporting consumer information.

41.     The failure on the part of a CRA and/or a furnisher to adhere to the accepted Metro 2 standards increases the probability of a reported item being false or materially misleading to users of consumer reports, as those users assume that the

information in the consumer reports is being reported in compliance with Metro 2 standards, and thus interpret that information accordingly.

42.     As a result, failure to adhere accepted Metro 2 standards in reporting information in consumer reports adversely affects consumers, as it causes inconsistent, misleading, and/or incorrect interpretation of information regarding consumers.

43.     The failure on the part of a CRA and/or a furnisher to adhere to the accepted Metro 2 standards can itself support a finding of willful violation as described by 15 U.S.C. § 1681n when that failure results in a report that is false, incomplete, and misleading.

44.     Further, the failure to adhere to the Metro 2 format, and/or the failure to follow the guidance of regulatory and industry sources, such as the CDIA, is evidence of willfulness of an FCRA violation under 15 U.S.C. § 1681n(a). See, *Gillespie v. Equifax Info. Servs., LLC*, No. 05C138, 2008 WL 4316950, at *8 (N.D. Ill. Sept. 15, 2008).

45.     As an integral aspect of its duties under the FCRA, Experian is required to have in place adequate and reasonable policies and procedures to assure the

maximum possible accuracy of information concerning individuals about whom Experian produces reports; the requirement to maintain reasonable procedures extends to Experian's handling and reinvestigation of disputed information. At all times relevant hereto, Experian adopted and implemented the CDIA guidelines and Metro 2 format as a means of fulfilling its aforementioned duties under the FCRA.

46.    As an integral aspect of its duties under the FCRA, Nationwide is required to have in place adequate and reasonable policies and procedures for handling an investigation of disputed information. At all times relevant hereto, Nationwide adopted and implemented the CDIA guidelines and Metro 2 format as a means of fulfilling its aforementioned duties under the FCRA.

47.    Experian, in conjunction with the other major credit reporting agencies, developed a browser-based software system that allows credit reporting agencies to electronically notify furnishers of disputed credit reporting and for furnishers to respond to such disputes following investigation. The system is commonly referred to as e-OSCAR and was designed to be Metro 2 compliant. See, *http://www.e-oscar.org/*

48.   In order for information in consumer files and on consumer reports to be reported consistently and correctly, and with maximum possible accuracy, users of the e-Oscar system must comply with accepted Metro 2 standards. Otherwise, the information contained in the resulting consumer reports is not consistent or uniform and is subject to gross misinterpretation by users of consumer reports.

### Factual Allegations Derived from Reporting to and by Experian

49.   On or about May 22, 2017, Plaintiff obtained a copy of her consumer report as published by Experian.

50.   That report contained erroneous information as provided by Nationwide and published and reported by Experian.

51.   Specifically, the report showed that Defendants were reporting two debts that were discharged in Plaintiff's Bankruptcy as collection accounts owing to Nationwide (the "Debts"), with past due balances of $74.00 and $39.00 due and owing.  Neither of the tradelines for the Debts contained any mention of or otherwise referenced Plaintiff's Bankruptcy.

52.   The relevant portion of the Nationwide tradelines appeared in the May 22, 2017, Experian report as follows:

14

| Account name | Account number | Recent balance | Date opened | Status |
|---|---|---|---|---|
| NATIONWIDE RECOVERY SERVICES | 8849332 | $74 as of 04/01/2017 | 11/2016 | Collection account. $74 past due as of Apr 2017. |
| 545 INMAN ST CLEVELAND, TN 37311 423 472 4600 Address identification number 0065159817 | Type Collection | Credit limit or original amount $75 | Date of status 03/2017 | |
| | Terms 1 Months | High balance $0 | First reported 02/2017 | |
| Original creditor HARBIN CLINIC LLC | On record until Mar 2023 | Monthly payment $0 Recent payment amount $0 | Responsibility Individual | |
| Account name NATIONWIDE RECOVERY SERVICES | Account number 8849333 | Recent balance $39 as of 04/01/2017 | Date opened 11/2016 | Status Collection account. $39 past due as of Apr 2017. |
| 545 INMAN ST CLEVELAND, TN 37311 423 472 4600 Address identification number 0065159817 | Type Collection | Credit limit or original amount $39 | Date of status 03/2017 | |
| | Terms 1 Months | High balance $0 | First reported 02/2017 | |
| Original creditor HARBIN CLINIC LLC | On record until Apr 2023 | Monthly payment $0 Recent payment amount $0 | Responsibility Individual | |

(Remaining portions of tradelines omitted.)

53.   Because the Debts predate the conversion of Plaintiff's Bankruptcy from Chapter 13 to Chapter 7, the Debts were discharged and the information described above was both false and misleading.

54.   Because Plaintiff filed her Amendment to Schedules, and again listed Nationwide as an unsecured creditor with nonpriority claims, *after* Plaintiff's

Bankruptcy was converted from Chapter 13 to Chapter 7, the Debts were discharged and the information described above was both false and misleading.

55.     Further, the specific reporting described above was in derogation of accepted industry standards for reporting the account as set forth by the CDIA and Metro 2 and as adopted by Defendants. See e.g., 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2").

56.     In a letter dated August 21, 2017, Plaintiff disputed the inaccurate and misleading information directly to Experian and advised Experian that the Debts predate the conversion of her Bankruptcy to Chapter 7, and thus should be reporting the status of the Debts as "discharged," and the balances of the Debts as "$0.00." The relevant portion of Plaintiff's dispute is reproduced below:

```
Please review the following incorrect items and make the
appropriate corrections and then send me a complete copy of my
updated credit file. First item is Nationwide Recovery Service,
545 Inman St., Cleveland, Tennessee 37311, Acct. No.: 8849332.
Second item is Nationwide Recovery Service, 545 Inman St.,
Cleveland, Georgia 37311, Acct. No.: 8849333. Third item is
Wakefield & Associates, 7005 Middlebrook Pike, Knoxville,
Tennessee 37909, Acct. No.: 1120381757, and fourth item is
Wakefield & Associates, 7005 Middlebrook Pike, Knoxville,
Tennessee 37909, Acct. No.: 1121471833. These accounts predate
the conversion of my bankruptcy to a chapter 7 and were
discharged on March 21, 2017. I am including a copy of the
discharge order for review. The balances should be $0.00 and the
statuses should read "discharged." Please forward the enclosed
discharge order to the furnishers to assist their investigation.
```

57.    In support of Plaintiff's dispute, and to assist Defendants' respective

investigations, Plaintiff included with her dispute a copy of the Discharge Order

issued and filed in Plaintiff's Bankruptcy.

58.    Pursuant to 15 U.S.C. § 1681i, Experian had the following duties: a

duty to notify Nationwide of Plaintiff's dispute within five business days of

receiving the dispute; a duty to forward all relevant information, i.e. the Discharge

Order, to Nationwide for review; a duty to conduct its own reasonable

reinvestigation of the disputed information; a duty to review and consider all relevant

information submitted Plaintiff, i.e. the Discharge Order; and, a duty to correct the

disputed tradelines or delete them from Plaintiff's consumer file.

17

59.     Upon information and belief, Experian timely notified Nationwide of Plaintiff's dispute, via e-OSCAR or otherwise, and provided the supporting documents.

60.     Alternatively, Experian failed to notify Nationwide of Plaintiff's dispute, and/or failed to provide the supporting documents.

61.     Pursuant to 15 U.S.C. § 1681s-2(b), Nationwide had a duty to conduct an investigation with respect to the disputed information, a duty to review and consider all relevant information provided by Experian, i.e. the Discharge Order, and a duty to modify or delete that information appropriately.

62.     In a document dated August 31, 2017, Experian advised Plaintiff that it had completely researched Plaintiff's dispute, and provided a "revised report" that reflected its findings. Experian provided a copy of the tradelines as reported "post-investigation," which reproduced the errors identified by Plaintiff in her original dispute letter.

63.     Specifically, the report showed that Defendants were still reporting the two discharged Debts as collection accounts owing to Nationwide, with past due balances of $74.00 and $39.00 due and owing.  Again, neither of the tradelines for

18

the Debts contained any mention of or otherwise referenced Plaintiff's Bankruptcy. In fact, there was no mention of or reference to Plaintiff's Bankruptcy in the reinvestigation report, such that a user of the report might be able to infer that the Debts were discharged.

64.     Further, the reinvestigation report now contained a secondary false and misleading tradeline for the discharged $74 Debt.

65.     The Nationwide tradelines appeared in the revised August 31, 2017, Experian report as follows:



66.   The post-investigation reporting of Defendants is, independently and jointly, false and misleading.

67.   The post-investigation reporting of Defendants is, independently and jointly, in derogation of the Metro 2 reporting standards, and that departure and failure to adhere to the adopted guidelines renders the reporting both false and materially misleading, as users of consumer reports assume Defendants' compliance with Metro 2 standards in reporting consumer information.

68.   There is no indication in the tradelines of the "verified" report that Plaintiff has disputed the information reported and published by Experian and Nationwide. The failure to note the legitimate dispute by Plaintiff of the relevant tradeline further renders the reporting materially misleading.

**Damages**

69.   The reporting of Defendants, independently and jointly, breached their respective duties as described herein.

70.   Defendants had actual notice that the information they were reporting regarding Plaintiff and the Debts was false, deceptive, and misleading.

71.    Plaintiff's dispute regarding Defendants' false, deceptive, and misleading reporting was clear, concise, and unambiguous.

72.    Plaintiff's dispute included documentation that demonstrated that what Defendants were reporting was false, deceptive, and misleading.

73.    Upon information and belief, Nationwide has reported the same type of false information – i.e., incorrectly reporting debts that are subject to a consumer's bankruptcy – to Experian multiple times in the past, and that Nationwide has affirmed the false information to be accurate and correct when disputed.

74.    Upon information and belief, Experian has previously been sued because of similar false information that Nationwide has provided to Experian. As such, Experian knows, or should know, that Nationwide is unreliable with respect to reporting this type of information.

75.    If Defendants had performed even a cursory review of all of the relevant information submitted with Plaintiff's dispute, the false, deceptive, and misleading information would have been corrected, or, at a minimum, it would have been deleted in accordance with § 1681i(a)(5)(A)(i) and/or § 1681s–2(b).

76.     Despite the foregoing, Defendants failed to correct or otherwise delete their false, deceptive, and misleading reporting as described herein.

77.     Instead, Defendants continued to report the false, deceptive, and misleading information regarding Plaintiff and the Debts.

78.     Accordingly, Defendants' conduct was willful.

79.     Upon information and belief, Defendants have published the false and misleading information regarding Plaintiff and the Debts to third parties.

80.     As a result of Defendants' willful actions and omissions, Plaintiff is eligible for statutory damages.

81.     Additionally, as a result of Defendants' actions and omissions, Plaintiff has suffered actual damages, including out-of-pocket expenses in challenging Defendants' wrongful representations regarding the Debts.

82.     A fundamental goal of the federal bankruptcy laws enacted by Congress is to give debtors a financial "fresh start" from burdensome debts. The Supreme Court made this point about the purpose of the bankruptcy law in a 1934 decision: "[I]t gives to the honest but unfortunate debtor…a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of

23

preexisting debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). This goal is accomplished through the bankruptcy discharge, which releases debtors from personal liability from specific debts and prohibits creditors from ever taking any action against the debtor to collect those debts.

83.     Realizing that Defendants are, in essence, thwarting Plaintiff from receiving the Fresh Start guaranteed her by her discharge, and that Nationwide intends to continue collection activity, including false credit reporting, Plaintiff has experienced worry, frustration, aggravation, anxiety, and stress.

84.     As a result of the actions and omissions of Defendants, Plaintiff's actual damages also include the illegitimate suppression of her Fair Isaac Corporation ("FICO") credit score and other credit rating modeling scores.

85.     Defendants' failures to correct and clear the inaccuracies in Plaintiff's Experian report creates a material risk of financial harm to Plaintiff stemming from the decreased perception of Plaintiff's credit-worthiness.

## CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. §§ 1681e(b) and 1681i –Experian Information Solutions, Inc.

86.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

87.   Pursuant to 15 U.S.C. § 1681e(b), Experian is responsible for following reasonable procedures to assure maximum possible accuracy of information whenever it prepares consumer reports.

88.   Experian's duty under 15 U.S.C. § 1681e(b) extends to reinvestigation reports and consumer disclosures.

89.   Pursuant to 15 U.S.C. § 1681i(a)(1)(A), Experian had an affirmative duty to independently investigate the dispute submitted by Plaintiff.

90.   Pursuant to 15 U.S.C. § 1681i(a)(2), Experian was required to communicate the specifics of Plaintiff's dispute to Nationwide.

91.   A consumer reporting agency's reasonable reinvestigation must be a good faith effort to ascertain the truth; a reasonable reinvestigation must answer the

25

substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

92.    In order to conduct a reasonable reinvestigation, and pursuant to 15 U.S.C. § 1681i(a)(4), Experian was required to review and consider all relevant information submitted by Plaintiff.

93.    Plaintiff's dispute was clear and unambiguous as to the inaccuracies of Experian's reporting.

94.    Plaintiff provided all the relevant information necessary for Experian to reinvestigate and correct the inaccuracies in its reporting.

95.    Experian breached its duties as described herein.

96.    If Experian had conducted a reasonable reinvestigation of Plaintiff's dispute, Experian would have reviewed and considered all of the information Plaintiff submitted in her dispute letter, and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

97.    If Experian had conducted a reasonable reinvestigation of Plaintiff's dispute, the tradelines for the disputed Debts on Plaintiff's Experian consumer report would have been appropriately corrected or deleted.

26

98.   Due to Experian's failure to follow reasonable procedures to assure maximum possible accuracy of information, and failure to conduct a reasonable reinvestigation of Plaintiff's dispute, the false and misleading information in Plaintiff's credit file and on Plaintiff's Experian report was not appropriately modified or deleted.

99.   Due to Experian's failure to follow reasonable procedures to assure maximum possible accuracy of information, and failure to conduct a reasonable reinvestigation of Plaintiff's dispute, the false and misleading information on Plaintiff's Experian report was, upon information and belief, published to third parties.

100.  Experian had all the information necessary to correct its reporting. Yet, Experian failed to correct the information in the face of clear evidence that its reporting was false and misleading. That failure indicates that Experian's review procedures were not reasonable.

101.  The fact that Experian had all the information necessary to correct its reporting, yet failed to do so in an appropriate manner, further indicates that Experian recklessly disregarded Plaintiff's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

102. Experian willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Plaintiff in her consumer reports, in reckless disregard of the statutory requirements, Plaintiff's dispute, and the publicly recorded Bankruptcy filings.

103. Experian willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i in multiple ways, including without limitation, by failing to conduct a reasonable reinvestigation of Plaintiff's dispute, and by failing thereafter to appropriately modify or delete information in her file and on her consumer report, in reckless disregard of the statutory requirements, Plaintiff's dispute, and the publicly recorded Bankruptcy filings.

104. As a result of Experian's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Plaintiff has suffered actual damages as described herein. Plaintiff is, therefore, entitled to recover actual damages from Experian pursuant to 15 U.S.C. §§ 1681n and 1681o.

105. Experian's actions and omissions were willful, rendering Experian liable to Plaintiff for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

28

106. Plaintiff is entitled to recover costs and attorneys' fees from Experian pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b) – Nationwide Recovery Service, Inc.

107. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

108. Pursuant to 15 U.S.C. § 1681s-2(a), Nationwide is responsible for providing accurate information whenever it furnishes information to any consumer reporting agencies.

109. Upon information and belief, Experian timely notified Nationwide of Plaintiff's disputes, and provided Nationwide with all the relevant information that Plaintiff had submitted.

110. Pursuant to 15 U.S.C. § 1681s-2(b), Nationwide had a duty to investigate Plaintiff's dispute and accurately report its findings to Experian.

111. A furnisher's investigation must be a good faith effort to ascertain the truth; a reasonable investigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

29

112.  In order to conduct a reasonable investigation, and pursuant to 15 U.S.C. § 1681s-2(b), Nationwide was required to review and consider all relevant information submitted by Plaintiff to Experian.

113.  Plaintiff's disputes were clear and unambiguous as to the inaccuracies of reporting the discharged Debts as in collections and with balances of $74.00 and $39.00 past due and owing.

114.  Nationwide breached its duties as described herein.

115.  If Nationwide had conducted a reasonable investigation of Plaintiff's dispute, Nationwide would have reviewed and considered all of the information Plaintiff submitted to Experian in her dispute, and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

116.  If Nationwide had conducted a reasonable investigation of Plaintiff's dispute, the tradelines for the disputed Debts on Plaintiff's Experian consumer report would have been appropriately corrected or deleted.

117.  Due to Nationwide's failure to provide accurate information, and failure to conduct a reasonable investigation of Plaintiff's dispute, the false and misleading

information in Plaintiff's credit file and on Plaintiff's consumer report as described herein was not appropriately modified or deleted.

118.  Due to Nationwide's failure to provide accurate information, and failure to conduct a reasonable investigation of Plaintiff's dispute, the false and misleading information on Plaintiff's Experian report was, upon information and belief, published to third parties.

119.  Nationwide had all the information necessary to correct its reporting. Yet, Nationwide failed to suitably correct its reporting in the face of clear evidence that it was false and misleading. That failure indicates that Nationwide's review procedures were not reasonable.

120.  The fact that Nationwide had all the information necessary to correct its reporting, yet failed to appropriately do so, further indicates that Nationwide recklessly disregarded Plaintiff's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

121.  Nationwide willfully, or in the alternative negligently, violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation upon receiving notice of Plaintiff's disputes from Experian by failing to appropriately report the results of its

31

investigation, and by failing to appropriately modify or delete the disputed information, in reckless disregard of the statutory requirements, Plaintiff's disputes, and the publicly recorded Bankruptcy Case filings.

122.  As a result of Nationwide's violations of 15 U.S.C. § 1681s-2(b), Plaintiff has suffered actual damages as stated herein. Plaintiff is, therefore, entitled to recover actual damages from Nationwide under 15 U.S.C. §§ 1681n and 1681o.

123.  Nationwide's actions and omissions were willful, rendering Nationwide liable to Plaintiff for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

124.  Plaintiff is entitled to recover costs and attorneys' fees from Nationwide pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT III

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10) – Nationwide Recovery Service, Inc.

125.  Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

126. Nationwide's provision of false and/or misleading information in connection with its attempts to collect the Debts violated multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10).

127. As a result of Nationwide's violations of the FDCPA, Plaintiff has suffered actual damages as described herein. Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. § 1692k.

128. Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover from Nationwide $1,000 in statutory damages and reasonable attorney's fees and costs.

## COUNT IV

### VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
### O.C.G.A. § 10-1-393(a) – Nationwide Recovery Service, Inc.

129. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

130. O.C.G.A. § 10-1-393(a) broadly prohibits unfair business practices.

131. It was unfair and deceptive for Nationwide to report false information regarding the discharged Debts to third-parties in an effort to collect the Debts.

132. As pled herein, Plaintiff was harmed by Nationwide's unfair conduct.

33

133. Upon information and belief, Nationwide regularly reports false information to credit reporting agencies in an effort to collect outstanding debts.

134. Upon information and belief, reporting false information to consumer reporting agencies is part of Nationwide's *modus operandi* for debt collection, and is done on a wide scale.

135. Nationwide's conduct amounts to an unfair business practice.

136. Nationwide's conduct has implications for the consuming public in general and potential negative impact on the consumer marketplace.

137. Nationwide does not maintain a place of business in Georgia and has no assets in Georgia, thus relieving Plaintiff of the Notice and Demand ante litem requirement of O.C.G.A. § 10-1-399(b).

138. As a result of Nationwide's violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover general damages, pursuant to O.C.G.A. § 10-1-399(a).

139. As a result of Nationwide's willful and wanton violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover exemplary damages, pursuant to O.C.G.A. § 10-1-399(a).

140.  Nationwide's actions were intentional, rendering it liable for treble damages, pursuant to O.C.G.A. § 10-1-399(c).

141.  Plaintiff is entitled to recover reasonable attorney's fees and expenses, pursuant to O.C.G.A. § 10-1-399(d).

142.  Furthermore, because Nationwide has acted in bad faith, been stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense, Plaintiff is also entitled to an award of reasonable attorney's fees and expenses, pursuant to O.C.G.A. § 13-6-11.

## **TRIAL BY JURY**

143.  Plaintiff is entitled to and hereby requests a trial by jury.

**WHEREFORE**, Plaintiff prays that judgment be entered in her favor and against Defendants, jointly and severally, for:

a.) Plaintiff's actual damages;

b.) Punitive and/or statutory damages pursuant to 15 U.S.C. § 1681n;

c.) General, exemplary, and treble damages pursuant to O.C.G.A. §§ 10-1-399(a) & (c);

d.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o and 1692k and O.C.G.A. §§ 10-1-399(d) and/or 13-6-11;

e.) Statutory damages against Nationwide pursuant to 15 U.S.C. § 1692k; and

f.) Such other and further relief as may be just and proper.

Respectfully submitted this 29th day of September, 2017.

**BERRY & ASSOCIATES**

*/s/ Paul J. Sieg*
Matthew T. Berry
Georgia Bar No.: 055663
*matt@mattberry.com*
Paul J. Sieg
Georgia Bar No.: 334182
*psieg@mattberry.com*
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3334
Fax (404) 235-3333

*Plaintiff's Attorneys*